OPINION OF THE COURT
Arnold L. Fein, J.
In this article 78 proceeding, petitioner Daskawisz seeks a judgment compelling respondent, Board of Trustees of the New York City Police Pension Fund, to grant petitioner accidental disability retirement status pursuant to section B18-43.0 of the Administrative Code of the City of New York. *1007 Petitioner was officially retired on ordinary disability from the police department, effective October 18, 1974 pursuant to section B18-42.0 of the Administrative Code.
The controversy revolved around the extent of the injuries petitioner sustained in a traffic accident on October 23, 1970, while operating a radio motor patrol car on emergency assignment. As a result of the collision, petitioner suffered a variety of injuries. According to the affidavit of petitioner’s partner, who was beside him at the time of the accident, petitioner was observed to be "motionless with his eyes closed and was without question unconscious” immediately after the accident. This testimony of petitioner’s fellow police officer is corroborated by the eye witness account of a civilian passerby, Jean M. Cory, who testified by affidavit that directly following the collision, she observed petitioner to be "slumped over the wheel apparently unconscious”.
Respondent does not deny the accident, nor that petitioner then suffered a cervical sprain and contusion of the chest. Respondent does, however, vigorously deny that petitioner was rendered unconscious as a result of a cerebral concussion received during the collision. Respondent bases its conclusions upon the emergency room report from Bellevue Hospital where petitioner was examined, diagnosed as suffering from a contusion of the chest and a cervical sprain — but no cerebral concussion — and released. Thereafter, petitioner Daskawisz was returned to the 17th precinct. Judged by fellow officers to be too dazed and disoriented to drive his own car home, Daskawisz was taken by police ambulance to Smithtown General Hospital where he was admitted, treated and released 12 days later. The Smithtown diagnosis was similar to that of Bellevue except that the doctor who treated petitioner at Smithtown felt that he had suffered a contusion of the right suboccipital region of the head and a cerebral concussion. In addition, it was observed that petitioner was unable to remember the events leading up to and directly after the accident. This amnesia was persistent up through the day of petitioner’s release from Smithtown. The headaches of which petitioner complained, however, ceased after five or six days in the hospital. X rays yielded no positive results. Yet, subsequently, petitioner developed symptoms of lumbar spinal pain, dizziness, unsteady gait, and tinnitus.
Following his release from the hospital, petitioner became depressed. His melancholy became progressively worse leading *1008 him to threaten suicide and finally to hospitalization. Diagnosed as experiencing a psychotic depressive reaction, petitioner was admitted to Syosset Hospital on August 23, 1971, released on September 13, 1971, and readmitted from October 24, 1971 to November 12, 1971. During these periods of hospitalization, petitioner received electro convulsive therapy in 16 separate treatments. Thereafter, his condition improved and petitioner returned to light duty with the police department commencing on November 18, 1971. He continued receiving various tranquilizing drugs on prescription and visited his psychiatrist every two weeks. Medication was discontinued in January, 1972, and petitioner seemed to he functioning well until he suffered a relapse on or about October 24, 1972 leading to his admission to Huntington General Hospital in late October. He was again given electro convulsive therapy and released on November 18, 1972. Thereafter, he was treated as an outpatient and continues to receive medication. The record reveals no further hospitalization or major change in condition since November, 1972.
Respondent does not deny the authenticity of petitioner’s mental breakdown, rather it asserts that the October 23, 1970 accident was not its proximate cause. Citing a report (not appended as an exhibit to respondent’s papers) of February 25, 1972 by a Dr. Arbuse, an honorary police psychiatrist, the medical board found that petitioner’s mental condition was the result of "psychotic” and "endogenous” factors and was therefore not attributable to any trauma received during the accident on October 23, 1970. However, the text of Dr. Arbuse’s report was not submitted to the court, and therefore the medical board’s conclusion cannot be sustained on the record submitted. In response to a prior judgment of this court directing it to reconsider petitioner’s case in the light of Matter of Centauro (41 AD2d 626), respondent has supplied a letter from a Dr. Seymour Berg, psychiatrist, who examined petitioner on April 29, 1976, and listed among his findings the conclusions that petitioner was properly diagnosed as suffering from a psychotic depressive reaction, that "the question of loss of consciousness plays no role in the etiology of this particular psychosis”, that "it is not likely that a head injury will produce a primarily depressive psychosis ten months later”, that "in going through the voluminous files and records I find no evidence of any other factors which could have produced a depressive psychosis”, that "electroshock therapy is never *1009 used for treatment of post-traumatic mental illness — but rather for depressive illness, and depressive illness is not caused by head trauma suffered ten years earlier [sic]” and finally that "there is no way I can conceive of medical evidence which can be found to support the officer’s private psychiatrist’s contention that his depressive illness was due to his head injury ten years earlier [sic]”, and that "there are no medical authorities of any consequence that I know of, who would even support the likelihood of such a cause and effect relationship”.
It would certainly seem that Dr. Berg’s apodictic pronouncements suffice to respond to the question of whether petitioner’s cerebral concussion was etiologically related to his psychosis. Clearly, the medical board has considered this qüestion in conformity with the opinion in Matter of Centauro (supra). There are, however, additional duties incumbent upon both the medical board and the respondent. Not only must they consider all the evidence related to petitioner’s claim (Matter of Centauro, supra) but they must, moreover, in rejecting the medical analysis and diagnosis of petitioner (which the medical board is free to do) state specifically their reasons for so doing and examine not only the nature of petitioner’s disability but also its cause. This obligation cannot be satisfied by a mere negative of "no line of duty cause found”. (Matter of O’Hara v Monaghan, 309 NY 931; Matter of Connolly v Kennedy, 9 Misc 2d 49; Tenore v City of New York, NYLJ, Dec. 3, 1963, p 12, col 6.) After receiving the report of petitioner’s private psychiatrist (which met petitioner’s initial burden of proof), the burden of going forward with the evidence in rebuttal shifted to respondent. It was the duty of respondent through its medical board to disprove the etiology advanced by petitioner, not by mere conclusory allegations, but by competent medical evidence indicating in their report a cause for petitioner’s psychosis other than line of duty. (Tenore v City of New York, supra.)
Dr. Berg’s letter is deficient for the above reasons. He does not dispute that petitioner is seriously ill. He merely says he knows of no evidence or authority to suggest that petitioner’s psychosis arises out of his line of duty injuries. This is insufficient to meet respondent’s evidentiary burden.
Accordingly, the findings of the medical board do not conform to the evidentiary standard required and are, consequently deemed arbitrary. Furthermore, the court finds that *1010 respondent, in relying upon the findings of its medical board, was acting capriciously and unreasonably. Therefore, the court directs the respondent to rescind its prior determination of petitioner’s retirement status and the matter is remanded for the purpose of affording respondent one further opportunity to create a proper foundation for its finding.